**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **TYRONE WASHINGTON**, <br><br> Defendant. | Case No. 07-cr-00131-13 (TNM) |

## MEMORANDUM ORDER

In October, Tyrone Washington will finish a years-long Virginia prison sentence and then start a 36-month federal sentence.  He earned the federal sentence for violating the terms of his supervised release on a prior drug charge.  The violation?  Committing the offense that led to the Virginia charges.

Washington now moves to modify his 36-month sentence.  Mot., ECF No. 644.  His request is not a model of clarity.  The Court construes it as a motion to modify the sentence under Federal Rule of Criminal Procedure 35(a) and as a compassionate release request under 18 U.S.C. § 3582(c)(1)(A).  *See* Mot. at 2 (citing 18 U.S.C. § 3582(c)(1)(A)).[1]  Neither proves successful.  A Rule 35(a) motion is untimely and the compassionate release request founders for several reasons.

### I.

In 2008, Tyrone Washington pleaded guilty to one count of conspiracy to distribute and possession with intent to distribute cocaine base, cocaine, and cannabis in violation of 21 U.S.C. § 846.  *See* Gov't Sentencing Mem. at 1, ECF No. 576; *see also United States v. Becton*, 601

---

[1]  The Court uses the pagination generated by the CM/ECF system.  Several pages appear to be missing from Washington's filing.  *See* Mot. at 2–3.

F.3d 588, 591–93 (D.C. Cir. 2010) (describing the years-long investigation into Washington and his co-conspirators for drug trafficking).  For that offense, he earned 90 months' incarceration followed by 48 months' supervised release.  Judgment at 1–3, ECF No. 243.  Washington completed his custodial sentence in March 2014, and then began supervised release.  *See* Gov't Sentencing Mem. at 2.

After three years of supervised release, Washington was arrested and charged with narcotics and racketeering offenses in Virginia.  *Id.*  Compared with his role in the drug charges leading to the prior federal case, this time he played an "elevated" role, acting as "a heroin supplier and more of a leader."  *Id.* at 3.  In June 2018, he entered an *Alford* plea to one narcotics conspiracy count and one racketeering conspiracy count.  *Id.* at 1–2.  The Virginia court sentenced him to concurrent sentences of 45 years on the racketeering charge and 40 years on the narcotics count, suspending all but 13 years on both charges.  *Id.* at 2; *see generally* Ex. at 1–10, ECF No. 574-1 (sealed Virginia court documents).

Those state offenses also carried federal consequences.  By committing another crime, Washington violated the supervised release conditions for the 2008 federal drug charge.  *See* Probation Pet. at 1–2, ECF No. 567; J. on Revocation at 2, ECF No. 580.  Washington conceded the violation.  *See* Def.'s Sentencing Mem. at 1, ECF No. 578-2.  In January 2019, then-Judge Ketanji Brown Jackson revoked his supervised release and sentenced Washington to 36 months' imprisment.  J. on Revocation at 2; *see* Jan. 29, 2019, Minute Entry (memorializing the final revocation hearing held that day).  The judgment specified that the sentence would "run partially concurrently to the term of imprisonment currently being served in the [Virginia case.]"  J. on Revocation at 2.  It would "begin to run on either March 17, 2027, or the date on which Mr. Washington completes his prison term in the [Virginia] case, whichever is earlier."  *Id.*

Now, Washington asks the Court to modify that sentence. Mot. at 1. As things currently stand, he remains in a Virginia prison serving out the rest of his state sentence. *See id.* He expects to complete that sentence on October 1, 2026—earlier than originally expected, thanks to a state law change. *Id.* Citing his early state release, among other factors, Washington asks the Court to modify his 36 months' sentence for the supervised release violation to run concurrently with his state sentence. *Id.* at 2. The Government opposes.

## II.

The Court cannot modify a criminal sentence unless permitted by statute or the Federal Rules of Criminal Procedure. 18 U.S.C. § 3582(c)(1)(B). Construing his motion generously, Washington invokes two possibilities—amendment under Rule 35(a) and compassionate release under 18 U.S.C. § 3582(c)(1)(A). Neither justifies the relief Washington seeks.

## A.

First, a Rule 35(a) motion is untimely. "Within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(a). Washington filed his modification motion well after the 14-day deadline. Judge Jackson sentenced Washington for his supervised release violation in January 2019. J. on Revocation at 2; Jan. 29, 2019, Minute Entry. He waited more than six years before seeking modification. So Rule 35(a) offers no path to relief. *See United States v. Pletnyov*, 47 F. Supp. 3d 76, 79 (D.D.C. 2014).

More, Washington has not identified an "arithmetical, technical, or other clear error" that the Court could correct. Fed. R. Crim. P. 35(a). The Court understands Washington's argument as follows: Because Virginia will release him sooner than expected, his federal sentence will not run "partially concurrently" with the state sentence as the judgment on revocation contemplates.

*See* Mot. at 1–2; J. on Revocation at 2.  That is no error.  The judgment recording Washington's

sentence anticipated the possibility that he would serve consecutive federal and state terms.  It

says that the federal sentence will begin to "run on either March 17, 2027 or the date on which

Mr. Washington completes his prison term in [the Virginia case,] *whichever is earlier*."  J. on

Revocation at 2 (emphasis added).  Because there is no clear error, then, even a timely Rule

35(a) motion would not have earned relief.

**B.**

Nor has Washington shown that he is entitled to compassionate release under 18 U.S.C.

§ 3582(c)(1)(A).  Washington bears "the burden of establishing that he is eligible for a" sentence

reduction.  *United States v. Holroyd*, 464 F. Supp. 3d 14, 17 (D.D.C.), *aff'd*, 825 Fed. Appx. 1

(D.C. Cir. 2020).  To be eligible, he must exhaust his administrative remedies, *see* 18 U.S.C.

§ 3582(c)(1)(A), and then show that "extraordinary and compelling reasons warrant such a

reduction," *id.* § 3582(c)(1)(A)(i).[2]  Finally, he must show that the 18 U.S.C. § 3553(a) factors

favor a reduction.  *Id.* § 3582(c)(1)(A).  Washington has not met at least the first two

requirements.

To start, Washington has not shown that he exhausted administrative remedies.  *See* 18

U.S.C. § 3582(c)(1)(A) (requiring exhaustion).  The exhaustion requirement, true enough, is not

jurisdictional.  *See, e.g.*, *United States v. Wilson*, 77 F.4th 837, 841 (D.C. Cir. 2023).  And courts

have excused exhaustion for movants like Washington in state custody.  *See United States v.*

*Jackson*, 468 F. Supp. 3d 59, 64 (D.D.C. 2020) (waiving the exhaustion requirement for "unique

---

[2]  A second compassionate release pathway exists for elderly prisoners.  18 U.S.C.
§ 3582(c)(1)(A)(ii).  Because Washington is younger than 70, this avenue is unavailable to him.
*See, e.g.*, Final Presentence Report at 3, ECF No. 229 (reporting Washington's birthday as
September 30, 1979).

circumstances," including because the movant was "not in BOP custody where he [could] pursue his administrative remedies"), *aff'd*, 26 F.4th 994 (D.C. Cir. 2022).  But the Court is reluctant to do so here over the Government's objection, *see* Opp'n at 7, ECF No. 646, when Washington himself makes no futility argument.  After all, it is Washington's burden to justify compassionate release in the first place.  *See Holroyd*, 464 F. Supp. 3d at 17.  So Washington's failure to exhaust administrative remedies alone dooms his request.

Even putting that flaw aside, Washington is not entitled to compassionate release because he has not shown "extraordinary and compelling reasons" justifying a sentence reduction.  18 U.S.C. § 3582(c)(1)(A)(i).  As the Court understands Washington's arguments, he offers four reasons for early release:  legal errors, family need, sentence length, and rehabilitation.  *See* Mot. at 3–6.  None of these circumstances, alone or together, meets the "demanding standard" for compassionate release.  *Fernandez v. United States*, 146 S. Ct. 1292, 1302 (2026).

First, alleged legal defects do not justify release.  Washington points to two alleged flaws with his sentence.  He criticizes his counsel as constitutionally ineffective.  Mot. at 4–5.  And he suggests that his sentence is erroneous because his early state release date means that his federal sentence will not run "partially concurrent" with his state sentence.  *Id.* at 2.  Neither ground is a permissible reason for compassionate release.  As the Supreme Court recently clarified, "the availability of compassionate release" is tied to "a defendant's personal circumstances." *Ferguson*, 146 S. Ct. at 1304.  It does not embrace legal challenges to a sentence.  *See id.* at 1303–04.[3]  There are other vehicles for these claims.

---

[3]  The appropriate avenue for Washington's ineffective assistance of counsel claim is a motion under 28 U.S.C. § 2255.  Washington does not request relief under that statute in his motion. And, in any event, a § 2255 motion would likely be untimely at this point.  *See* 28 U.S.C. § 2255(f)(1).

Second, Washington's evidence about the effects of paternal absence on children and his desire to return home to "mentor" his son also fall short. Mot. at 3, 6. The Court does not doubt that Washington's family feels his absence. But those family circumstances do not justify early release. *See, e.g.*, *United States v. Jenkins*, 2021 WL 9563332, at *6 (D.D.C. Nov. 23, 2021) (rejecting similar arguments), *aff'd*, 50 F.4th 1185 (D.C. Cir. 2022).

Third, the Court is less than sympathetic about Washington's sentence length argument. Washington "has been incarcerated for 15 years of the last 17 years of his life" and would prefer not to spend even more time in federal prison. Mot. at 1. But Washington's situation is of his own making. He committed serious offenses two years after serving federal prison time on other serious drug charges. *See* Gov't Sentencing Mem. at 3. And Judge Jackson lawfully imposed additional punishment for the supervised release violation. *See* J. on Revocation at 2. A lawfully imposed sentence does not typically justify compassionate release. *See, e.g.*, *Jenkins*, 2021 WL 9563332, at *5 (collecting cases). And the Court sees no reason to depart from that principle here.

Finally, Washington offers rehabilitation evidence. While the Court commends Washington for taking advantage of prison programming, *see* Mot. at 5, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for release, 28 U.S.C. § 994(t). And the Court is especially reluctant to credit rehabilitation here, where Washington supplies no evidence in support of his claims. *Cf. United States v. Lawson*, 2022 WL 2663887, at *15–16 (D.D.C. July 11, 2022) (describing "thoughtful personal statements" and "letters from prison staff" about the movant's rehabilitation, but nevertheless denying the compassionate release motion), *aff'd*, 2023 WL 4044609 (D.C. Cir. June 16, 2023).

6

**III.**

After considering Washington's arguments in favor of modifying his sentence, including the possibility that he is entitled to compassionate release, it is hereby

**ORDERED** that Defendant's [644] Motion for Modification of Sentence is DENIED.

**SO ORDERED.**

Dated: July 21, 2026

TREVOR N. McFADDEN, U.S.D.J.